# UNITED STATES DISTRICT COURT

### District of New Jersey

Chambers of
**William H. Walls**
District Judge
————

(973) 645-2564
(973) 645-3436 Fax

Martin Luther King Jr.
Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

<u>NOT FOR PUBLICATION</u>

<u>LETTER ORDER</u>

<u>ORIGINAL ON FILE WITH CLERK OF COURT</u>

May 23, 2005

**Appearances:**

Robert L. Tarver, Jr.
Law Offices of Robert L. Tarver, Jr.
66 South Main Street
Toms River, New Jersey 08757

Eric S. Lasky
Morgan, Lewis and Bockius
502 Carnegie Center
Princeton, New Jersey 08540

Re:    <u>Bolden et al., v. National Financial Services LLC</u>; No. 04-5527 (WHW)
          Defendants' Partial Motion to Dismiss

Dear Counsel:

This matter is before the Court on the Defendants' motion to dismiss certain counts of the

Amended Complaint.  The motion is decided without oral argument pursuant to Fed. R. Civ. P.

78.

**FACTS AND PROCEDURAL BACKGROUND**

Defendants are moving to dismiss the First, Second, Fourth, Sixth, and Seventh Counts of the Amended Complaint.[1]  The Amended Complaint alleges that defendant National Financial Services, LLC ("NFS"), its parent corporation FMR Corp., and John and Jane Does 1-50 have discriminated against plaintiffs Keith Bolden and Clifford Jenkins because of their race, and have intentionally inflicted emotional distress on plaintiffs.

The plaintiff Bolden alleges that he worked for NFS from 1996 until he was fired in October 2002.  Between 1996 and 1999, Bolden and Jenkins worked together in the mutual fund transfer department as senior representatives, the highest non-management title in the department.  Plaintiffs were the only two African Americans in the department holding that title at that time.  Between 1997 and 1999, Bolden applied for five different promotions and was denied each time.  During that time period, Bolden's direct supervisor was Andrew Salmieri, who in turn was supervised by Rob Rocco.  For part of that time period, Rocco's supervisor was Tim Maisonet, but he was replaced at some point by John Schmidt.  The first promotion denial occurred in 1997; the promotion was given to a white male with less experience than Bolden and whose experience was in a slightly different area from that of the position.  The second denial occurred in 1998 when Salmieri and Rocco refused to sign his application for a promotion, preventing him from applying.  The third denial occurred during that same year when he applied for another promotion but the job was given to a white man whom Bolden had trained when he worked for his previous employer, Prudential.  The man had less experience then Bolden.  The fourth incident occurred in 1999 when Bolden applied for another promotion but the job was

---

[1] Defendants also moved to dismiss the Third, Fifth, Eighth and Tenth Counts, but on March 30, 2005, the parties stipulated to dismissal of these counts.

given to a white woman who had no experience in the field.  The fifth denial also occurred in 1999 when he attempted to apply for another promotion.  At that time, he asked Schmidt to sign his application, to which Schmidt replied "don't even bother to apply."  That promotion was given to a white woman with no experience in the field.

Bolden also alleges that in 1999 he and Jenkins were denied the opportunity to take the Series 7 examination.  The opportunity was instead given to five white employees, several of whom were subordinate to Bolden.  When he asked Schmidt why he was not permitted to take the exam, Schmidt told him that it was Salmieri and Rocco who determined which employees were given the opportunity.  Bolden told Schmidt that he thought Salmieri and Rocco were discriminating against him and Jenkins.

In addition to the promotion denials and the exam incident, the Amended Complaint alleges that after the third promotion denial in 1998, Bolden told Chris Robinson, manager of the department in which the vacancy had been, that he believed he was being discriminated against due to his race.  Bolden also communicated his belief to the human resources department.  After he complained about discrimination, Salmieri and Rocco began to micro manage his daily activities, always monitoring him and asking him about his whereabouts.

Bolden also alleges that defendants retaliated against him for complaining about discrimination by falsely rating his job performance.  During the time plaintiffs worked for NFS, the company used a performance evaluation system which was totally arbitrary.  Evaluations were conducted by managers and those scores were utilized in making advancement and retention decisions.  When Bolden began working for NFS in 1997, he received a performance evaluation of "exceeds standards," which was the second highest rating an employee could

-3-

receive at that time.  After he complained about the discrimination in 1998, his performance ratings steadily decreased.  By 2001, his performance evaluation scores had decreased to "2.5" or "needs improvement."  In October 2002, defendants used the false performance ratings to justify firing Bolden.  He alleges that he was fired in retaliation for claiming discrimination.  He also alleges that in or about late 2000, he became physically ill as a result of emotional trauma and stress inflicted on him at work.  His ailments include hypertension, migrane headaches, and chest pain.

As for the plaintiff Jenkins, he began working at NFS in 1987 and remains employed there.  He too was denied the opportunity to take the Series 7 examination in 1999.  He alleges that after Bolden voiced his discrimination claim to Schmidt regarding the exam, he too began to have problems with NFS's management.  In July 1999, he was told that Salmieri and Rocco were giving him a rating of "4" for his performance.  When he received his appraisal, however, the rating marked was a "3."  Schmidt eventually had the rating changed to a "4."  Jenkins complained to Schmidt that he was being discriminated against. After this complaint, his performance ratings steadily declined from a "4" in 2000 to a "2.5" in July 2002.  Jenkins also claims that his lower performance ratings were defendants way of retaliating against him for complaining of discrimination.

The "2.5" rating in July 2002 was given by Michael Keenan, Jenkins's supervisor at that time.  Jenkins alleges that on September 4, 2002, Keenan sent his staff an email containing racist remarks.  More specifically, the email made stereotypical and denigrating statements about professional tennis players, Venus and Serena Williams, and about an African American female employee.  Keenan sent other emails that also contained racist remarks.  Jenkins alleges that

-4-

Keenan gave him a low performance rating in retaliation for Jenkins's discrimination claim. NFS management was aware of the content of Keenan's emails and failed to take any action despite a policy prohibiting such harassment.  Jenkins alleges that management allowed the harassment to continue in order to force him to leave the company.

On July 12, 2004, plaintiffs filed a Complaint against defendants in the Superior Court of New Jersey, Bergen County.  On September 29, 2004, an Amended Complaint was filed in the same court.  Counts I and VI allege that defendants discriminated against plaintiffs in violation of the New Jersey Law Against Discrimination ("NJLAD").  Counts II and VII charge that defendants violated the NJLAD by retaliating against plaintiffs for filing discrimination claims.  Count IV states a claim for intentional infliction of emotional distress as to Bolden.  On November 10, 2004, defendants removed the action to this Court.  Simultaneously, defendants filed a motion to dismiss certain counts of the Amended Complaint.

### STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions

cast in the form of factual allegation.  See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2

(1977).  Moreover, the claimant must set forth sufficient information to outline the elements of

his claims or to permit inferences to be drawn that these elements exist.  See Fed. R. Civ. P.

8(a)(2);  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Court may consider the allegations

of the complaint, as well as documents attached to or specifically referenced in the complaint,

and matters of public record.  See Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d

213, 216 (3d Cir. 2003); see also 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE §

1357 (2d ed. 1990).

## DISCUSSION

### I.      Discrimination Claims Based on Denials of Promotions

Defendants argue that Counts I and II should be dismissed to the extent they are based on

denials of promotions because they are barred by the statute of limitations.  The New Jersey

Supreme Court has held that a single statute of limitations applies to all NJLAD claims.  Montells

v. Haynes, 133 N.J. 282, 291 (1993).  The Montells court also held that the proper statute of

limitations to apply was two years.  Id. at 294-95.  As Counts I and II assert claims under the

NJLAD, the statute of limitations for these claims is two years.  Defendant argues that because

the Complaint was filed on July 10, 2002, more than two years after the dates of the promotion

denials, the last one being in 1999, Bolden's claims for discrimination based on such actions are

barred by the statute of limitations.

Plaintiffs argue that the statute of limitations for the denials of promotions is tolled

because of the continuing violation doctrine.  The continuing violation doctrine is "an equitable

exception to the statute of limitations" under which "a plaintiff may pursue a claim for

discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." Shepherd v. Hunterdon Developmental Center, 174 N.J. 1, 6-7 (2002) (citing West v. Philadelphia Elec. Co., 45 F.3d 744, 754-55 (3d Cir.1995)). In Shepherd, the New Jersey Supreme Court adopted the framework developed by the Supreme Court in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), for differentiating between discrete discriminatory acts and hostile work environment claims in the context of the continuing violation doctrine. As examples of discrete acts, the Morgan court mentioned "termination, *failure to promote*, denial of transfer, or refusal to hire . . . ." Id. at 114. Discrete discriminatory or retaliatory acts occur on the day that it happens. Id. at 110. Hostile work environment claims are different in that they involve repeated conduct. Id. at 115. Such claims "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts." Id. (internal citations omitted). The Supreme Court held that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." Id. at 105. The Morgan court also held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purpose of liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Id.

After deciding to adopt the Morgan framework, the Shepard court posed two questions to be asked when considering whether the continuing violation doctrine applies:

> First, have plaintiffs alleged one or more discrete acts of discriminatory conduct?
> If yes, then their cause of action would have accrued on the day on which those
> individual acts occurred.  Second, have plaintiffs alleged a pattern or series of
> acts, any one of which may not be actionable as a discrete act, but when viewed
> cumulatively constitute a hostile work environment?  If yes, then their cause of
> action would have accrued on the date on which the last act occurred,
> notwithstanding 'that some of the component acts of the hostile work environment
> [have fallen] outside the statutory time period.'

174 N.J. at 21 (quoting Morgan, 536 U.S. at 117).  "In determining whether an actionable hostile

work environment claim exists, we look to 'all the circumstances,' including 'the frequency of

the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance.'" Id. at 19-20 (quoting Morgan. 536 U.S. at 116).

   Plaintiffs admit that each failure to promote Bolden constitutes a discrete act that could be

actionable on its own.  However, the parties disagree over whether discrete acts, coupled with

other non-discrete acts, can be cumulatively viewed as a hostile work environment to which the

continuing violation doctrine should be applied.  Plaintiffs say yes; defendants say no.  Defendant

relies on the New Jersey Supreme Court's failure to specifically exclude discrete discriminatory

acts from those acts that can be viewed cumulatively to amount to a hostile work environment:

"have plaintiffs alleged a pattern or series of acts, any one of which may not be actionable as a

discrete act, but when viewed cumulatively constitute a hostile work environment?" Id. at 21.

Defendant argues that the nature of the language used, "*may* not be actionable as a discrete act,"

the Court contemplated that such acts may also be actionable discrete acts.  While Morgan and

Shepherd are clear in holding that a cause of action based on a discrete discriminatory act begins

to run on the day the act occurred, neither case expressly holds that discrete discriminatory acts

cannot be considered acts that make up a person's hostile work environment claim.  Thus, if Bolden has sufficiently stated a hostile work environment claim and at least one act forming that claim occurred within the statutory period, the Court sees no persuasive reason why discrete discriminatory acts cannot form the basis of that claim.

Defendants next argue that Bolden's hostile work environment claim is not timely because none of the acts occurred within the two-year period.  While each of the failures to promote occurred between 1997 and 1999, Bolden alleges that in 1998, after he complained to a manager at NFS that he was being discriminated against, his managers began treating him differently from other employees.  More specifically, he alleges that they started micro managing his daily activities, constantly monitoring his whereabouts and questioning him about such. (Am. Compl. at ¶ 13.)  While defendants represent that this act occurred only in 1998, the allegations do give any information about the duration of these activities.  Drawing favorable inferences in favor of the non-moving party as the Court is required to do in the context of a 12(b)(6) motion to dismiss, it is reasonable to infer that these acts may have continued up until Bolden was fired in October 2002.  Under those circumstances, the last discriminatory act would have occurred within the statutory period, making Bolden's claim timely.  Thus, based on the allegations in the Amended Complaint, Bolden's hostile work environment claim is timely.

Defendants final argument is that there is no continuity between the acts complained of to support a continuing violation.  To establish a continuing violation based on a series of discriminatory acts, a plaintiff must demonstrate that "the discrimination is more than the occurrence of isolated or sporadic acts of intentional discrimination and is instead a continuing pattern of discrimination."  Mancini v. Township of Teaneck, 349 N.J.Super. 527, 557

(N.J.Super.A.D. 2002) (citing <u>Bolinger v. Bell Atlantic</u>, 330 N.J.Super. 300, 307 (N.J.Super.A.D. 2000)).  "In evaluating whether alleged incidents of discrimination constitute a continuing violation, the court should consider three factors: (1) subject matter--whether the violations constitute the same type of discrimination; (2) frequency; and (3) permanence--whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate."  <u>Id.</u> (citing <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 755 (3d Cir.1995); <u>Bolinger</u>, 330 N.J.Super. at 307).

The Court is satisfied that Bolden has sufficiently alleged a continuing violation.  From 1997 to 2002, Bolden alleges that he was denied promotions on five separate occasions, he was subjected to micro managing and constant monitoring of his whereabouts by his managers, he was denied an opportunity to take the Series 7 examination, and his performance rating were falsified.[2]  These acts were sufficiently frequent and most of them were perpetrated by the same two managers.[3]  Furthermore, all of the acts are alleged to constitute race discrimination.  While some of the acts should have triggered, and in fact did alert Bolden that he may have had a discrimination claim against defendants, the Court is not convinced that this factor is determinative of whether a continuing violation exists.   The discriminatory acts alleged by

---

[2] As noted before, even though Bolden does not allege how long the micro managing and monitoring of his whereabouts continued, the Court infers that it continued until he was fired in 2002.

[3] While Bolden does not allege who falsified his performance ratings, it is reasonable to infer that Salmieri and Rocco were responsible for evaluating his performance.

Bolden are more than some isolated incidents; when viewed cumulatively, they suggest a "continuing pattern of discrimination." Mancini, 349 N.J.Super. at 557.

For the foregoing reasons, defendants' motion to dismiss Counts I and II of the Amended Complaint to the extent they are based on the failures to promote Bolden is denied.

**II.     Discrimination Claims Based on Failure to Train**

Defendants argue that Counts I, II, VI, and VII should be dismissed to the extent they are based on the denial of the opportunity to take the Series 7 examination for two reasons.  First, defendants contend that it is not an adverse employment action.  Second, they charge that even if it were an adverse employment action, the claim is barred by the statute of limitations.

As to Bolden (Counts I and II), it is irrelevant whether denying him the opportunity to take the exam can be the basis of a separate actionable claim because the Court has already found that it is one of the acts that forms a continuing violation.  Defendants advance a Third Circuit case, Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 483-84 (1997), for the proposition that a "failure to . . . train claim addresses discrete instances of alleged discrimination that are not susceptible to a continuing violation analysis."  That case does not require the Court to change its interpretation of Shepherd.  Rush was decided before Shepherd and the claims were not brought under the NJLAD but rather Title VII.  If the New Jersey Supreme Court intended to limit the basis of a continuing violation to only non-discrete acts, then the court could have said "any one of which [is] not . . . actionable as a discrete act," rather than using the phrase "may not be actionable."  Defendants' motion to dismiss Counts I and II to the extent they are based on denying Bolden the opportunity to take the Series 7 exam is denied.

As to Jenkins (Counts VI and VII), the Court agrees with defendants that the failure to let Jenkins sit for the Series 7 exam is not part of a continuing violation.  Unlike Bolden's situation, denying Jenkins the opportunity to take the test was the first discriminatory act against him. It is distinguishable from Bolden's situation where the incident took place while he was already being discriminated against in a number of other ways.  Furthermore, Jenkins alleges that Salmieri and Rocco discriminated against him only one other time when in 1999 they originally gave him a performance rating of "3" instead of the "4" he was told he would receive.  Thus, none of the acts by Salmieri and Rocco occurred within the statutory period.  All the other incidents of discrimination that Jenkins complains of were perpetrated by two other managers who rated his performance in 2000 and 2001, and Keenan who evaluated him in 2002 and sent the racist emails.  For these reasons, the failure to let Jenkins sit for the exam is not part of a continuing violation.  The Court need not decide whether the act itself is actionable because even if it were, Jenkins would be barred from suing on it because the incident occurred more than two years before the Complaint was filed July 12, 2004.   To the extent Counts VI and VII are based on the failure to let Jenkins sit for the exam, those claims are barred by the statute of limitations.

### III.    Claim for Intentional Infliction of Emotional Distress

The last claim defendants move to dismiss is Bolden's claim for intentional infliction of emotional distress.  Keeping with their theme, defendants charge that this claim too is barred by the statute of limitations.  The statute of limitations for intentional infliction of emotional distress is two years.  N.J.S.A. § 2A:14-2.  Defendants contend that all of the wrongs complained of, except Bolden's termination, occurred more than two years before the Complaint was filed.  Plaintiffs argue that in July 2002, defendants made false and discriminatory statements

accompanying Bolden's performance evaluation, and that this falls within the statutory time period.  Nowhere in the Complaint is this fact alleged and there are no allegations from which it could be inferred.  The Court agrees with defendants that plaintiffs cannot rely on new facts not alleged in their Complaint to defeat a motion to dismiss.  See Hammond v. City of Philadelphia, 2001 WL 823637, *2 (E.D.Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.").  The Court has already said, however, that it is reasonable to infer from the allegations that the harassing conduct - the micro managing, monitoring of his whereabouts, and constant questioning about same - occurred up and until Bolden was fired in October 2002.  Thus, this conduct would have occurred within the statutory time frame.

Plaintiffs argue that Bolden's termination combined with allegations of harassment that occurred within the statutory time period sufficiently support a claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, one of the required elements is that "the defendant's conduct must be extreme or outrageous, meaning it must 'go beyond all possible bounds of decency[.]'" Lascurain v. City of Newark, 349 N.J.Super. 251, 277 (N.J.Super.A.D. 2002) (quoting Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366 (1988)).  Plaintiffs advances Borecki v. E. Int'l Mgmt. Corp., 694 F. Supp. 47 (D.N.J. 1988) to support their position that Bolden's claim is sustainable.  In Borecki, the plaintiff was suing his former employer for discrimination and intentional infliction of emotional distress.  The plaintiff based his emotional distress claim on a retaliatory discharge.  He alleged that he was fired in retaliation for being disloyal to the employer and that it was an act of age discrimination.  The Borecki court held that the conduct did not support a claim for intentional

-13-

infliction of emotional distress.  Id. at 62.  In reaching that conclusion, the court first noted the requirements for stating a claim: "New Jersey courts, applying the standards of the Restatement (Second) of Torts § 46, have imposed liability for this tort 'where the conduct exceeded all bounds usually tolerated by decent society and where the actions are especially calculated to cause and do cause mental distress of a very serious kind.'" Id. at 60 (quoting Porta v. Rollins Environmental, 654 F. Supp. 1275, 1285 (D.N.J.1987)).  The court went on to recognize that while decisions to fire an employee generally do not support an emotional distress claim, where such decisions are "accompanied, or preceded, by harassing conduct courts have permitted the claim to go to the jury."  Id. at 61.  In addition to discussing the facts in Portia where the plaintiff was subjected to sexual harassment, the court also described the facts in Cory v. Smith Kline Beckman Corp., 585 F. Supp. 871 (E.D.Pa. 1984).  As quoted by the Borecki court, the defendant in Cory "[did] not deny that Cory was repeatedly denied promotions, was required to devote considerable time and energy to defending her performance, and ultimately lost her job. The court held that 'this series of events could form the basis of a jury verdict on a theory of intentional infliction of emotional distress.'" Borecki, 694 F. Supp. at 61 (quoting Cory, 585 F. Supp. at 875) (internal citations omitted).  Assuming that Bolden was subjected to harassing behavior - being micro managed and constantly being monitored by his managers who regularly questioned his whereabouts - up and until he was fired in October 2002, he has sufficiently stated a claim for intentional infliction of emotional distress.

**CONCLUSION**

It is on this 23d day of May, 2005,

ORDERED that Defendants' motion to dismiss Counts I and II to the extent they are

based on the failure to promote Bolden is DENIED; Defendants' motion to dismiss Counts I, II,

VI and VII to the extent they are based on the failure to let plaintiffs sit for the Series 7

examination is DENIED in part and GRANTED in part; and Defendant's motion to dismiss

Count IV is DENIED.


                                                    s/William H. Walls
                                                    United States District Judge